UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAYDRA APRIL SPARKS-ROSS,

        Petitioner,

                                      Case No. 14-cv-11602

v.

                                        HON. MARK A. GOLDSMITH

MILLICENT WARREN,

        Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO**
**ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO**
**PROCEED IN FORMA PAUPERIS ON APPEAL**

      Petitioner Faydra April Sparks-Ross has filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1), challenging her state conviction and sentence of 30 to 120 months' imprisonment for assaulting a prison employee, Mich. Comp. Laws § 750.197c. Respondent Millicent Warrant urges the Court to deny the petition on grounds that one of Petitioner's claims is not cognizable on habeas review, and that her other claims lack merit. See Answer at 3-4 (Dkt. 8). For the reasons stated below, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

      The charge against Petitioner arose from allegations that Petitioner threw urine, feces, and toilet paper at a correctional officer while she was confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan. The prosecutor's theory was that Petitioner committed the assault to get transferred from the prison infirmary to another unit in the prison.

Petitioner was tried before a jury in Washtenaw County Circuit Court in Ann Arbor, Michigan. Prosecution witness Karla Mitchell Hedrick testified that Petitioner was a patient in the infirmary at the Huron Valley Women's Facility on May 29, 2009. Officer Hedrick explained that the infirmary was like a hospital inside of the prison, and that Petitioner was housed there because she was eight or nine months pregnant and the doctor thought Petitioner would benefit from being in the infirmary. At approximately 3:30 p.m. on May 29, 2009, Officer Hedrick conducted her rounds at the prison and observed that the window to Petitioner's room was covered with magazines or papers. She banged on the door, and when she did not get a response, she called her supervisor. With her supervisor's permission, she opened the door to Petitioner's cell. She was then hit in the face with the contents of Petitioner's porta potty, which included urine, feces, and toilet paper. She claimed that she had ongoing concerns for her health and well-being as a result of the assault, because it was possible to contract a disease from urine and fecal matter, and the risk of contracting hepatitis was very high in the prison. 9/13/2010 Trial Tr. at 92-111, 113 (Dkt. 9-3).

Merlyn Niles testified that he was a former shift supervisor at the Huron Valley Women's Facility. On May 29, 2009, at about 3:30 p.m., he responded to Officer Hedrick's call for assistance. He observed the blocked window to Petitioner's cell, and he tried knocking on the door to get a response from Petitioner. He and Officer Hedrick opened the door to make sure that Petitioner was alright. Petitioner then threw a bucket of excrement and urine at Officer Hedrick. Sergeant Niles called another officer to escort Petitioner to segregation, because that was where prisoners went when they assaulted staff. Id. at 128-134.

Officer Evelyn Ewing also responded to the call for assistance in the infirmary on May 29, 2009. She saw feces and paper on the door to Petitioner's cell and on the floor. She and

2

Sergeant Niles hand-cuffed Petitioner and then Ewing escorted Petitioner part of the way to segregation. On the way there, Petitioner said, "Well, I did it this time. I did the assault this time." Id. at 136-138.

Michigan State Trooper Duane Zook was notified of the assault and made contact with Petitioner at the prison. Petitioner mentioned to Trooper Zook that she was mistreated in the infirmary, but she did not admit to throwing anything at Officer Hedrick. Petitioner informed Trooper Zook that she was placed in the infirmary two days earlier and that she thought the infirmary was not the right place for her because she was not ill. She explained that she had irregular bowel movements in the infirmary, that she was transported to the hospital for the problem, and that subsequently she was sent back to the infirmary where she did not want to be. After the assault, she was moved out of the infirmary. Id. at 142-146.

Petitioner was the only defense witness. She testified that, initially she was in a segregation unit, but that she was moved to the infirmary so that she could be observed, as she was nine months pregnant at the time. She claimed that she could have been moved to the pregnancy unit where other pregnant women were housed and that, by moving her to the infirmary, she and her unborn child were endangered. She claimed that, before she went to the infirmary, she was very healthy, but after being placed in the infirmary, she became ill and went to the hospital where she was giving antibiotics. The antibiotics made her feel better, and on the following day, she was sent back to the infirmary. She claimed that the thought of going back to the infirmary made her scared for her baby because she had already gotten sick and she feared that she might lose her baby. She also claimed that she had filed a grievance and contacted a number of prison officials in an effort to be removed from the infirmary, but everyone refused her request for a transfer to another unit.

Continuing, Petitioner admitted that she subsequently devised a plan to get out of the infirmary.  The plan included covering her door with magazine papers and then waiting until someone opened her door.   Petitioner also admitted that she threw her feces, urine, and used toilet paper at an officer, but she claimed that she threw the mixture over the officer's head, rather than directly at the officer.   She denied intending to harm or embarrass anyone; she claimed instead that she had wanted to get someone's attention so that officials would send her back to the segregation unit where she was previously housed.  She said that it was a desperate situation that called for desperate measures and that, even though she could have done things differently, her other attempts to solve the problem had not worked.  Id. at 149-166.

On September 13, 2010, the jury found Petitioner guilty, as charged, of assaulting a prison employee.  On October 14, 2010, the trial court assessed fees and costs against Petitioner and sentenced Petitioner to imprisonment for 30 to 120 months.   Petitioner moved for re-sentencing, but the trial court denied her motion after hearing oral arguments on the motion.

Petitioner subsequently raised her first three habeas claims in a delayed application for leave to appeal.  She raised her fourth claim in a motion for leave to file a supplemental brief. The Michigan Court of Appeals denied Petitioner's motion to file a supplemental brief and denied leave to appeal "for lack of merit in the grounds presented."  People v. Sparks-Ross, No. 307498 (Mich. Ct. App. Mar. 7, 2013) (Dkt. 9-6).  On September 3, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  See People v. Sparks-Ross, 835 N.W.2d 584 (Mich. 2013) (table).

On April 18, 2014, Petitioner filed her habeas corpus petition.  At the time, Petitioner was incarcerated at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan. Records maintained by the Michigan Department of Corrections on its official website indicate

that the Michigan Parole Board released Petitioner on parole on June 1, 2016. <u>See</u> http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=339161.

Petitioner raises the following four grounds for relief in her petition:  (i) the trial judge reversibly erred by ruling that Petitioner would not be allowed to present a self-defense/duress defense; (ii) the prosecutor engaged in misconduct by (a) injecting irrelevant and highly prejudicial information into the trial and (b) presenting evidence of uncharged misconduct; (iii) trial counsel's performance was deficient because he failed to (a) ask the presiding judge to instruct the jury on self-defense, etc., and (b) argue that mental illness/pre-partum depression should constitute a mitigating factor at sentencing; and (iv) the trial court's assessment of $1,664.00 in costs was an abuse of discretion because of the utter lack of foundation for the assessment.  Pet. at 4-9.  As noted above, the Michigan Court of Appeals rejected Petitioner's first three claims for lack of merit, and the Michigan Supreme Court was not persuaded to review the issues.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that

4:14-cv-11602-MAG-CEB   Doc # 10   Filed 12/01/16   Pg 7 of 17   Pg ID 430

supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 562 U.S. at 102.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id.  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## IV.  ANALYSIS

### A.  Claim One: Denial of Right to Present a Defense

7

Petitioner alleges that the state trial court erred by precluding her from presenting a defense of self-defense, defense of another, or duress. Petitioner asserts that her testimony at trial, if believed, established a good-faith belief that her actions were necessary to protect her unborn child and, therefore, she was entitled to an instruction on self-defense, defense of another, or duress. Pet. at 4, 16-17 (cm/ecf pages).

A defendant in a criminal prosecution is entitled to "a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). In this case, however, the trial court permitted defense counsel to argue his theory of the case that Petitioner assaulted the complainant to get someone's attention and to ensure the safety of her unborn baby. Defense counsel also was permitted to present the defense that Petitioner did not intend to harm or embarrass the complainant. 9/13/2010 Trial Tr. at 13-14, 88, 180-182. Consequently, Petitioner was not deprived of her right to present a defense.

To the extent Petitioner is challenging the trial court's jury instructions, her claim fails for the reasons given below.

## 1. Clearly Established Federal Law

"[N]ot every . . . deficiency in a jury instruction rises to the level of a due process violation," Middleton v. McNeil, 541 U.S. 433, 437 (2004), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). The only question on habeas review of jury instructions is whether the instructions infected the entire trial to such an extent that the conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). So, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.'"

Buell v. Mitchell, 274 F.3d 337, 355 (6th Cir. 2001) (quoting Scott v. Mitchell, 209 F.3d 854, 882 (6th Cir. 2000)).  Furthermore, a defendant generally is entitled to a jury instruction only on a "recognized defense for which there exists evidence sufficient for a reasonable jury to find in his [or her] favor."  Matthews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313 (1896); C. Torcia, Wharton's Criminal Procedure § 538, p. 11 (12th ed. 1976)).

### 2.  Michigan Law on Self Defense, Defense of Another, and Duress

In Michigan, a claim of self-defense is justified only if the defendant honestly and reasonably believed that she was in imminent danger of death or serious bodily harm and that what she did was necessary to save herself from the threatened danger.  People v. Riddle, 649 N.W.2d 30, 38 (Mich. 2002) (quoting People v. Lennon, 38 N.W.2d 871, 872 (Mich. 1888)).  The "defense of others" theory is available "if a person acts to prevent unlawful bodily harm against another."  People v. Kurr, 654 N.W.2d 651, 656 (Mich. Ct. App. 2002) (emphasis omitted).  This defense extends to the protection of a fetus from an assault against the mother, id. at 654, but the defense is justified only if the defendant "honestly and reasonably believed there was danger of serious bodily harm or death, and [the defendant's] actions must have been reasonably necessary to defend the person endangered."  James v. Lafler, 452 F. App'x 673, 676 (6th Cir. 2011).

"Duress is a common-law affirmative defense . . . applicable in situations where the crime committed avoids a greater harm."  People v. Lemons, 562 N.W.2d 447, 453 (Mich. 1997).  To successfully raise the defense, the defendant must introduce some evidence from which the jury could conclude the following:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm.

Id.

### 3. Application

Although a defendant's right to a meaningful opportunity to present a complete defense can be violated if the jury was "plainly misinstructed on a matter critical to her defense," Barker v. Yukins, 199 F.3d 867, 876 (6th Cir. 1999), there was no evidence at Petitioner's trial that either she or her unborn baby was in danger of death or serious bodily harm. Petitioner did testify that she was healthy before she went to the infirmary, that she got sick after being in the infirmary, and that she spent one night in the hospital as a result of being sick. She also claimed that people in the infirmary were terminally ill and dying and that germs were "flying around." But there was no testimony that anyone in the infirmary had a contagious illness or that Petitioner's hospitalization resulted from contact with patients in the infirmary. In fact, Petitioner admitted that she was on segregation status in the infirmary and that she was not associating with other inmates in the infirmary. 9/13/2010 Trial Tr. at 152-154, 156, 163. And Officer Hedrick testified that Petitioner was placed in the infirmary because the doctor thought it would benefit her. Id. at 113.

The Court concludes that the evidence did not support a jury instruction on self-defense, defense of another, or duress. Consequently, the jury instructions did not render Petitioner's entire trial fundamentally unfair, nor violate her right to present a complete defense. Therefore, the Court declines to grant relief on claim one.

10

**B.  Claim Two: The Prosecutor's Admission of Evidence**

Petitioner alleges next that the prosecutor committed misconduct by injecting irrelevant and highly prejudicial information into the record and by presenting evidence of uncharged misconduct.  Pet. at 6 (cm/ecf page).  The disputed evidence consisted of Officer Hedrick's testimony that she had health concerns after Petitioner's assault on her.  9/13/2010 Tr. at 111. Petitioner contends that this testimony was irrelevant and highly prejudicial and that it should have been excluded as more prejudicial than probative.  Petitioner asserts that the prejudicial effect of the evidence was compounded by testimony that she was found guilty of other prison misconduct on the day before the assault.  Id. at 104-105.  Petitioner concludes that the cumulative effect of the prosecutor's misconduct deprived her of due process and her right to a fair trial.  Pet. at 6, Attachment C (ground two continued).

The legal grounds for Petitioner's challenge to evidence of her prior misconduct are the Michigan Rules of Evidence.  Petitioner contends that the evidence was improper under Michigan Rule of Evidence 404(b) because the prosecutor failed to give proper notice of her intent to introduce the evidence.  Petitioner contends that the evidence was irrelevant under Michigan Rule of Evidence 401 and more prejudicial than probative under Michigan Rule of Evidence 403.  Pet. at 17-18 (cm/ecf pages).

To the extent that the admission of any evidence violated Michigan's Rules of Evidence, Petitioner's claim is not cognizable on federal habeas review, Hall v. Vasbinder, 563 F.3d 222, 239 (6th Cir. 2009), because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law," Pulley v. Harris, 465 U.S. 37, 41 (1984).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  McGuire, 502 U.S. at 68.

11

The Court recognizes that an evidentiary error can warrant habeas corpus relief if "the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (citing McGuire, 502 U.S. at 69-70). Here, however, Officer Hedrick's concern about her health was relevant. The evidence tended to show that she was assaulted with an offensive touching, which was against her will. This was an element that the prosecution was required to prove. 9/13/2010 Trial Tr. at 195.

Testimony about Petitioner's prior misconduct in prison was relevant to show a possible motive for her conduct, as Officer Hedrick was the officer who charged Petitioner with the prior misconduct. Furthermore, testimony about the prior misconduct was brief, the prosecutor did not mention it in her closing argument, and the nature of the prior misconduct was not mentioned.

The Court concludes that the prosecutor's alleged evidentiary errors did not render Petitioner's trial fundamentally unfair. Therefore, Petitioner's right to due process was not violated by the admission of the disputed evidence. Petitioner's additional contention that the cumulative effect of the evidentiary errors violated her right to due process also does not warrant habeas relief, because it is not a cognizable claim on habeas corpus review. Sheppard v. Bagley, 657 F.3d 338, 348 (6th Cir. 2011).

**C. Claim Three: Trial Counsel**

Petitioner alleges that her trial attorney's performance was deficient because the attorney (i) failed to ask the trial judge for a special jury instruction on self-defense, defense of another, or duress and (ii) failed to argue at sentencing that mental illness or pre-partum depression is a mitigating factor. Pet. at 7 (cm/ecf page).

**1. Clearly Established Supreme Court Precedent**

12

"[C]learly established federal law here is <u>Strickland v. Washington</u>," 466 U.S. 668 (1984).  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 189 (2011).  Under <u>Strickland</u>, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.S. at 687.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u>

The "deficient performance" prong of the <u>Strickland</u> test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> "Judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 562 U.S. at 111-12 (quoting <u>Strickland</u>, 466 U.S. at 693).  Furthermore, review of an ineffective-assistance-of-counsel claim is "doubly deferential" under AEDPA

> because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt.

<u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (per curiam).

## 2. Application

13

### a.  Failure to Request a Special Jury Instruction

Defense counsel stated at trial that he was not requesting any specific jury instructions. 9/13/2010 Tr. at 12, 167.  Petitioner claims that defense counsel should have asked the trial court to give a jury instruction on self-defense, defense of another, or duress.  The trial court, however, informed defense counsel at the beginning of the trial that it would not be instructing the jury on self-defense, but that defense counsel could make his argument to the jury.   Id. at 8, 10-14.  In light of the trial court's ruling and the fact that there was insufficient evidence to justify a jury instruction on self-defense, defense of another, or duress, see supra, it would have been futile to request a jury instruction on those defenses.  Attorneys are not required to file futile motions to avoid a claim of ineffective assistance.  Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984).

Furthermore, it is obvious from the record that defense counsel's trial strategy was to show through argument and testimony that Petitioner lacked the intent to harm or embarrass the complainant and that her only intent was to protect her unborn baby.  "Counsel's strategy choice was well within the range of professionally reasonable judgments."  Strickland, 466 U.S. at 699. The Court concludes that defense counsel was not ineffective for failing to request a special jury instruction on self-defense, defense of another, or duress.

### b.  Failure to Argue a Pre-Partum-Depression Theory

Petitioner argues that trial counsel also was ineffective for failing to argue at sentencing that Petitioner's mental illness or pre-partum depression was a mitigating factor.  The argument that pre-partum depression is a mitigating factor at sentencing was a novel theory.[1]  Even if there were some basis for the theory, Petitioner did not testify that she was mentally ill or depressed while she was pregnant.  She claimed, instead, that she was healthy and that she was simply

---

[1]  The Court has found no Michigan or federal case law on the theory.

concerned for her baby because she had gotten sick in the infirmary and she thought that she might lose the baby.  9/13/2010 Tr. at 152-153, 155.

The trial court, moreover, stated at the post-sentencing hearing that, even if it were convinced there was such a phenomenon as pre-partum depression, the court saw no reason to change Petitioner's sentence.  The court reasoned that being depressed did not mean the person could not have a sufficient criminal mens rea.  11/17/2011 Mot. Hr'g Tr. at 7-8 (Dkt. 9-5).

This Court concludes that defense counsel's failure to raise the pre-partum-depression theory at sentencing did not amount to deficient performance.  Even if it did, the deficient performance did not prejudice the defense, given the trial court's post-judgment comment that the theory was not a basis for changing Petitioner's sentence.

### D.   Claim Four: Court Costs

In her fourth and final claim, Petitioner alleges that the trial court abused its discretion by assessing $1,664.00 in court costs.  According to Petitioner, there was no showing that the costs were specific to her case or that the costs should not be borne by the public for the maintenance and functioning of government agencies.  Pet. at 9 (cm/ecf page).

State prisoners are entitled to the writ of habeas corpus only if they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  And the traditional purpose of the writ of habeas corpus is to challenge the fact or length of confinement and to obtain release from unlawful imprisonment.  Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973).

Petitioner's objection to the assessment of costs does not challenge her confinement in prison, and "[a] monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement" of § 2254.  See United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990) (addressing

a motion to vacate sentence under 28 U.S.C. § 2255). Therefore, Petitioner is precluded from challenging the imposition of costs, and habeas relief is not warranted on her fourth claim. See United States v. Watroba, 56 F.3d 28, 29 (6th Cir. 1995) (concluding that the defendant was precluded from challenging the imposition of costs in a § 2255 petition because § 2255 is limited to prisoners who claim a right to release from custody); see also Michaels v. Hackel, 491 F. App'x 670, 671 (6th Cir. 2012) (rejecting the argument that a fine imposed by the state court was sufficient to render the petitioners in custody for purposes of district court jurisdiction in a habeas case brought under § 2254).

### E. Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Petitioner may not appeal the Court's denial of her habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

Reasonable jurists would not debate the Court's assessment of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further. The Court,

16

therefore, declines to issue a certificate of appealability.  Petitioner nevertheless may proceed in forma pauperis on appeal because the Court granted her in forma pauperis status in this Court (Dkt. 5), and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

## V.  CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus (Dkt. 1), declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated:  December 1, 2016                                    s/Mark A. Goldsmith
          Detroit, Michigan                                  MARK A. GOLDSMITH
                                                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 1, 2016.

                                                             s/Karri Sandusky
                                                             Case Manager